UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| GLORIA S. KIMMEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:09-CV-218 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Gloria S. Kimmel appeals to this Court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Kimmel applied for benefits on July 7, 2005, alleging that she became disabled as of September 20, 2003. (Tr. 10.) The Commissioner denied her application initially and upon reconsideration, and Kimmel requested an administrative hearing. (Tr. 10.) Administrative Law Judge ("ALJ") Yvonne K. Stam conducted a hearing on February 27, 2008, at which Kimmel, who was represented by counsel; Mr. Richard Kimmel, the claimant's husband; and Mr. Joseph Thompson, a vocational expert ("VE"), testified. (Tr. 560-88.)

On November 3, 2008, the ALJ rendered an unfavorable decision to Kimmel, concluding

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

1

that she was not under a disability. (Tr. 13.) The Appeals Council denied Kimmel's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 2-6.) Kimmel then filed a complaint with this Court on August 10, 2009, seeking relief from the Commissioner's final decision. (Docket # 1.) On appeal, Kimmel argues that the ALJ failed to include all of her limitations in the hypothetical posed to the VE. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Br.") 6-8.)

## II. FACTUAL BACKGROUND[2]

### A. Background

Kimmel was born on December 23, 1964, and was thirty-nine years old at the time of her onset date. (Tr. 70.) She has completed the ninth grade and has past relevant work as a press operator, nurse aide, and folder. (Tr. 417; Br. 2.) Kimmel alleges that she is disabled due to back pain, hearing loss, and depression. (Br. 2.)

### B. Summary of Relevant Medical Evidence

Following a car accident in 2003, Kimmel reported left shoulder pain and right wrist tenderness to her family physician, Dr. Mark Rollins. (Tr. 15.) An examination showed some tenderness and some reduced range of motion, but no neurological deficits. (Tr. 15.) Kimmel was treated with physical therapy, medication, osteopathic manipulation, and Yoga. In January 2004, Dr. Rollins noted that Kimmel was experiencing a large amount of stress, which was likely contributing to her overeating and weight-gain. (Tr. 439.)

Kimmel was referred to neurologist Dr. Eric Schreier, who examined her on September

---

[2] Kimmel's only argument involves a pure question of law and the parties do not dispute the ALJ's findings with respect to her medical history. Accordingly, and in the interest of brevity, this portion of the Opinion and Order relies heavily on the medical evidence summarized in the ALJ's decision and recounts only the portions of the 588-page administrative record necessary to the decision.

2

29, 2004. He noted an antalgic gait, positive left shoulder apprehension and impingement tests, and some reduced range of motion, but his findings were otherwise unremarkable with no neurological deficit. (Tr. 15.) Kimmel showed improvements after treatment with a left shoulder injection and trigger point injections.

A Functional Capacity Evaluation was conducted on April 12, 2005. There was evidence that Kimmel exaggerated the severity of her symptoms and some of her observed movement patterns and behavior were not consistent with the symptoms she alleged. (Tr. 15.) Similarly, a September 3, 2005, State Agency physical consultative examination noted a positive Farber's test on the right, but all other examination findings were unremarkable. (Tr. 15.)

On September 13, 2005, Dr. Schreier noted that Kimmel reported continued pain, but that there was no objective evidence for a new focal motor deficit. On January 27, 2006, Dr. Rollins provided an opinion that essentially supports the conclusions reached during Kimmel's Functional Capacity Evaluation. (Tr. 15.) Kimmel saw Dr. Rollins again in April 2006, and he noted that she was possibly experiencing mild depression and anxiety secondary to her chronic pain. (Tr. 318.) When Kimmel met with Dr. Rollins on July 20, 2006, however, she stated that things were going pretty well and did not complain of depression. She told Dr. Kimmel that she was much more functional and that she only had occasional neck and lower back pain. (Tr. 317.)

On April 3, 2006, Kimmel was evaluated by Dr. David H. Gover, a clinical psychologist, at the request of Social Security. (Tr. 416-20.) She told Dr. Gover that she began to feel depressed following a car accident. Kimmel stated that she liked to have everything in her closets organized by color and size and that she could not stand it when her house was cluttered. (Tr. 416.) She told Dr. Gover that she had trouble lifting objects and had to sleep on a special

3

pillow, or else she would wake up in pain. (Tr. 416.)

Dr. Gover found that Kimmel was pleasant and personable, but self-conscious throughout her session. (Tr. 419.) He noted that her mood was mildly dysphoric and that her affect was of appropriate variability. (Tr. 419.) Dr. Gover found that Kimmel had the capacity to continuously attend to a simple, repetitive task for two hours, but that her concentration was not generally good and that she appeared to function in the borderline intellectual range. (Tr. 420.) He diagnosed Kimmel with obsessive-compulsive disorder, anxiety-based; major depression, recurrent; dependent personality disorder; and possible borderline intellectual functioning and assigned her a Global Assessment of Functioning score ("GAF score")[3] of 45. (Tr. 420.)

On April 17, 2006, Dr. J. Gange, a non-examining state agency physician, completed a Psychiatric Review Technique. (Tr. 396.) Dr. Gange found that Kimmel had an affective disorder, an anxiety-related disorder, and a personality disorder. (Tr. 396.) He also found that she had moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace. (Tr. 406.) Dr. Gange noted that Kimmel had mild restrictions in her activities of daily living and no episodes of decompensation. (Tr. 406.) He also completed a Mental Residual Functional Capacity Assessment, in which he found that Kimmel had moderate limitations in the following areas: her ability to understand and remember detailed instructions, her ability to carry out detailed instructions, her ability to interact appropriately with the general public, and her ability to set realistic goals or make plans independently of others. (Tr. 410-11.) However, Dr. Gange concluded that although she might prefer to avoid public contact and that

---

[3]A GAF score measures a clinician's judgment of the individual's overall level of psychological, social, and occupational functioning. *See* DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS - Text Revision 32 (4th ed. 2000). The higher the GAF score, the better the individual's psychological, social, and occupational functioning. A GAF score between 41 and 50 is indicative of an individual who has serious symptoms or any serious impairments in social, occupational, or school functioning.

her impairments might interfere with completing the complex tasks found in her past work, she could still perform simple, repetitive tasks. (Tr. 412.)

*C. Kimmel's Hearing Testimony*

On February 27, 2008, Kimmel appeared with counsel and testified before the ALJ. (Tr. 560-88.) Kimmel testified that since her alleged onset date of September 20, 2003, she has not had any employment. (Tr. 564.) She then recounted her prior work experience as a machine operator, deli worker, and nurse's aide (Tr. 565-67.) She said that she suffered from hearing problems and pain in her neck, shoulders, back, and fingers. (Tr. 568.) Kimmel testified that the pain in her back is nearly constant and that her doctor instructed her not to lift more than eight pounds. (Tr. 569.)

Kimmel testified that a typical day consists of taking care of her dog, fixing meals, doing chores, and doing physical therapy exercises. (Tr. 571.) She stated that she used to do all the grocery shopping by herself, but she now needs her husband to help her lift heavy items. (Tr. 571-72.) Kimmel informed the ALJ that she was currently taking Lortab to help with her pain and Ambien to help her sleep. (Tr. 572.)

Mr. Richard Kimmel, the claimant's husband, also testified. He stated that Kimmel was not as active as she used to be and that she frequently complains of pain. (Tr. 580.) He testified that she still does much of the housework, but that he helps with tasks that involve heavy lifting. (Tr. 580-81.) He also testified that he believed her hearing had degenerated and that her hearing aid also caused her discomfort. (Tr. 582-83.)

Finally, Mr. Joseph Thompson, the VE, testified. In her hypothetical, the ALJ asked the VE if there were any jobs that could be performed by an individual with Kimmel's age,

5

education, and past work experience who was limited to simple, routine tasks that did not require any contact with the public and did not require acute hearing. (Tr. 585-86.) The VE stated that, given these limitations, Kimmel would be unable to return to her past work as a press operator and nurse's aide, but that she could perform her past work as a folder. (Tr. 585-86.) Thompson also testified that there are an additional 650 sedentary exertion jobs and 2,600 light exertion jobs in the regional economy that Kimmel could perform. (Tr. 585-86.)

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

6

## IV. ANALYSIS

### *A. The Law*

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the

---

[4] Before performing steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

7

Commissioner. *Clifford*, 227 F.3d at 868.

### B. The ALJ's Decision

On November 3, 2008, the ALJ rendered her opinion. (Tr. 7-19.) She found at step one of the five-step analysis that Kimmel had not engaged in substantial gainful activity since her alleged onset date of September 20, 2003. (Tr. 12.) At step two, she determined that Kimmel's back pain, hearing loss, and depression qualified as severe impairments. (Tr. 12.) At step three, she determined that Kimmel's impairments were not severe enough to meet a listing. (Tr. 13.) The ALJ found that although Kimmel's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the symptoms were not persuasive. (Tr. 14.) Additionally, the ALJ determined that Kimmel's RFC would allow her to perform "light unskilled simple, routine tasks at all exertional levels which do not require acute hearing and do not involve working with the general public." (Tr. 13A.) The ALJ also noted that Kimmel must avoid noisy environments. (Tr. 13A.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that Kimmel could return to her past relevant work as a folder and would be able to perform other work in the national economy. (Tr. 17-19.) She therefore concluded at step five that Kimmel was not under a disability at any time from the alleged onset date through the date of the decision and her claim for benefits was denied. (Tr. 19.)

### C. The ALJ's RFC and Hypothetical Were Not Flawed.

Kimmel's sole argument on appeal is that the ALJ failed to include limitations in her RFC finding and hypothetical question to the VE to adequately account for her finding that

8

Kimmel had moderate limitations in concentration, persistence, or pace. (Br. 6-8.) During the hearing, the ALJ's hypothetical to the VE limited Kimmel to simple, routine tasks. Kimmel now argues that, as a matter of law, a limitation to simple, routine work is not sufficient to account for moderate limitations in concentration, persistence, or pace. Kimmel's argument, however, is unpersuasive.

In support of her argument, Kimmel cites *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008); and *Young v. Barnhart*, 362 F.3d 995 (7th Cir. 2004), for the broad proposition that a limitation to "simple, routine tasks or unskilled work does not account for [moderate] limitations in concentration, persistence, or pace." (Br. 7.) Kimmel also concedes, however, that in *Similia v. Astrue*, 573 F.3d 503, 520-22 (7th Cir. 2009); *Jens*, 347 F.3d at 213; *Sims v. Barnhart*, 309 F.3d 424, 431 (7th Cir. 2002); and *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002), "the Seventh Circuit has upheld a similar limitation . . . ." (Br. 7.) Kimmel makes no effort to explain or distinguish these cases, and, indeed, offers only a few paragraphs in support of her argument.

In response, the Commissioner argues that "there are cases from the 7th Circuit in which the Court clearly found that an RFC for simple, routine work adequately accounted for moderate limitations in concentration, persistence, and pace." (Resp. Br. 4.) The Commissioner highlights *Johansen* and argues that the limitation to simple, routine work was upheld in that case because the ALJ translated the findings of Johansen's physician into a specific RFC assessment. 314 F.3d at 288-89. The Commissioner then argues that, just as in *Johansen*, the ALJ in this case relied on the opinion of the state agency psychologist, "who converted Kimmel's moderate mental limitations into a specific RFC for simple, routine work that did not require public contact."

9

(Resp. Br. 4) (citing Tr. 406-12.) "Conversely, when the Seventh Circuit has reversed an ALJ's finding regarding the claimant's mental RFC, it has based its decision on a lack of adequate evidentiary support or explanation for the ALJ's conclusions." (Resp Br. 4.)

The RFC is a determination of the tasks a claimant can do despite her limitations. *See* SSR 82-62. While the RFC can be expressed in terms of exertional categories such as "light", medium", or "heavy", the ALJ must first make a more detailed function-by-function assessment of the claimant's current physical and mental abilities. SSR 96-8p. The RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant non-medical evidence, such as observations [by] a lay witness of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR 96-5p. In doing so, an ALJ must consider the combined effect of a claimant's severe and non-severe impairments when assigning an RFC. *See Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005); *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004); *Clifford*, 227 F.3d at 873; *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000).

In determining the severity of a claimant's mental impairment, the ALJ must address the claimant's degree of functional limitation in four "broad functional areas": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 416.920a, 404.1520a(c)(3); *see, e.g.*, *Jones v. Massanari*, No. 01-C-0024-C, 2001 WL 34382025, at *13 (W.D. Wis. Oct. 18, 2001). The Seventh Circuit Court of Appeals has stated that the ALJ must then "incorporate" these limitations into her RFC determination. *Kasarsky v. Barnhart*, 335 F.3d 539, 543-44 (7th Cir. 2003) (holding that the ALJ erred when his

RFC did not "take into account" his finding at step two that the claimant had deficiencies in concentration, persistence, or pace); *see also Stewart*, 561 F.3d at 684-85.

In her decision, the ALJ found that Kimmel has moderate difficulties with regard to concentration, persistence, or pace. (Tr. 13.) The ALJ then found that Kimmel has the RFC to "perform light unskilled simple, routine tasks at all exertional levels which do not require acute hearing and do not involve working with the general public." (Tr. 13A.) The Commissioner argues that the medical evidence supports the ALJ's limitation of Kimmel to simple, routine tasks adequately accommodates Kimmel's moderate difficulties in concentration, persistence, or pace. Kimmel disagrees and argues that, *as a matter of law*, an ALJ may not account for moderate limitations in concentration, persistence, or pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public.

"[A]n ALJ is free to formulate [her] mental residual functional capacity assessment in terms such as 'able to perform simple, routine, repetitive work' so long as the record adequately supports that conclusion." *O'Connor-Spinner v. Astrue*, No. 4:06-cv-0171, 2007 WL 4556741, at *7 (S.D. Ind. Dec. 20, 2007) (quoting *Kusilek v. Barnhart*, No. 04-C-310-C, 2005 WL 56716, at *4 (W.D. Wis. Mar. 2, 2005) (internal quotation marks omitted)). That is, courts have held that when a medical source of record translates his findings into a particular RFC assessment, the ALJ may reasonably rely on that opinion in formulating a hypothetical question for the VE. *Id.*; *see, e.g.*, *Johansen*, 314 F.3d at 289 (concluding that the ALJ's limitation to low-stress, repetitive work adequately incorporated the claimant's moderate mental limitations because the consulting physician had essentially "translated [his] findings into a specific RFC assessment, concluding that [the claimant] could still perform low-stress, repetitive work."); *Howard v.*

11

*Massanari*, 255 F.3d 577, 581-82 (8th Cir. 2001) (concluding that the ALJ adequately captured the claimant's deficiencies in concentration, persistence, or pace in his RFC that limited the claimant to simple, repetitive tasks, in part because the state agency psychologist concluded in his functional capacity assessment that the claimant could sustain sufficient concentration and attention to perform simple, repetitive, and routine activity); *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (finding that the ALJ's limitation of claimant to work that is "routine and low stress" as recommended by one medical source of record adequately accounted for the fact that claimant often suffered from deficiencies in concentration, persistence, or pace).

      Here, the ALJ found that Kimmel had no more than moderate limitations in her ability to maintain concentration, persistence, or pace and limited her to basic, unskilled, simple, and routine tasks. (Tr. 13.) In reaching this conclusion, the ALJ directly relied upon the opinion of the state agency psychologist, Dr. J. Gange, who specifically opined that "while [the claimant's] impairments might interfere with the complex task completion inherent in past work, they would allow for the completion of simple, repetitive tasks." (Tr. 16, 412.)

      Accordingly, this is not a case, as Kimmel would have it, where the ALJ crafted a hypothetical that contradicts or ignores the medical evidence. Rather, the ALJ adopted the findings of the state agency psychologist, Dr. Gange, who translated his own findings into an RFC assessment. In such a case, the ALJ may reasonably rely on that opinion in formulating her own RFC and hypothetical. *See Johansen*, 314 F.3d at 289; *Howard*, 255 F.3d at 581-82; *Smith*, 307 F.3d at 379; *O'Connor-Spinner*, 2007 WL 4556741, at *7; *Kusilek,* 2005 WL 56716, at *4. The ALJ's decision, therefore, is based on substantial evidence, *Schmidt*, 395 F.3d at 744, and will not be overturned. *Clifford*, 227 F.3d at 869.

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter judgment in favor of the Commissioner and against Kimmel.

SO ORDERED.

Enter for July 28, 2010.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge